Kerry McInerney Freeman (SBN 184764)
kmf@millerlawgroup.com
Claudia J. Castillo (SBN 215603)
cjc@millerlawgroup.com
MILLER LAW GROUP
A Professional Corporation
111 Sutter Street, Suite 700
San Francisco, CA 94104
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Plaintiff
REEVES & ASSOCIATES, PLC

**SEALED BY COURT ORDER**

**FILED** 2011 SE 23 P 3:55

**WHA**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REEVES & ASSOCIATES, PLC,

Plaintiff(s),

v.

MATTHEW D. MULLER, AND DOES 1-25, INCLUSIVE,

Defendant(s).

Case No. CV 11 4768

**TO BE FILED UNDER SEAL WITHOUT AN ENTRY IN THE COURT'S ELECTRONIC FILING SYSTEM**

DECLARATION OF NANCY E. MILLER IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

Complaint filed:

I, Nancy E. Miller, declare:

1. I am a Senior Partner at the law firm of Reeves & Associates, a Professional Law Corporation ("R&A" or "the Firm"), an immigration law firm. I am an attorney duly licensed to practice law in the State of California, and am also currently the American Immigration Lawyers Association liaison to the Executive Office for Immigration Review for the Immigration Court. I have personal knowledge of the facts set forth in this declaration,

1
DECLARATION OF NANCY E. MILLER IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER FOR A HEARING ON A PRELIMINARY INJUNCTION - Case No.:

unless otherwise stated, and if called as a witness, I could and would competently testify to them.

2. I have been practicing law for over twenty-five years. In that time, I have successfully represented hundreds of clients in political asylum, withholding of deportation, cancellation of removal and fraud waiver cases before the Immigration Court, U.S. District Court and the United States Court of Appeals; argued the landmark case of *Song v. INS* - a U.S. District Court case involving the availability of 212(h) waivers for persons convicted of certain crimes; defended clients in the immigration courts; obtained immigration and naturalization benefits for clients from the INS; defended clients in state and federal criminal proceedings; and pursued post-conviction relief, such as petitions for habeas corpus and writs of coram nobis, for non-citizens convicted of crimes. I am lead counsel in a nation-wide class action lawsuit concerning the correct interpretation of a section of the Child Status Protection Act.

3. I am a certified family law mediator. I obtained certification after having completed 40 hours of training in the mid 1990's. I worked with a psychologist who was also a certified family law mediator. We were hired by divorcing couples to facilitate mediation sessions which allowed them to discuss their basic differences in a non-threatening, supervised and structured setting. We taught them how to actively listen to each other. Our work was based on the premise that, once each side understood the other's position, the animosity would dissipate and they would be able to decide dissolution issues (such as custody, support, division of property) productively and fairly.

4. I joined R&A in September of 1998. I became a partner in January 2008. Upon joining, I familiarized myself with the Firm's policies and practices, many of which are designed to ensure that the Firm delivers efficient, quality, confidential representation to the Firm's clients, as well as to protect the valuable proprietary data and Firm management

strategies that have helped the Firm grow into a well-regarded, efficient, affordable provider of immigration law services over the 31-year history of the Firm. Included among these policies are those regarding confidentiality, privacy protocol, use and maintenance of equipment, access to personnel files, computer and electronic mail usage, employee conduct and work rules, and return of Firm property upon termination. Over the course of years that I have been an employee and a partner of the Firm, I have continued to keep myself apprised of any changes in the Firm's policies and practices. True and correct copies of some of the Firm's policies, along with Mr. Muller's signed acknowledgments and agreements thereto, are attached hereto as Exhibit A.

5. Shortly after the Firm hired Matthew Muller on March 29, 2011, I learned about various behaviors that caused me, and others at the Firm some concern. Among the issues I learned about was that it appeared that Mr. Muller was sleeping overnight in the San Francisco office where he worked. I received copies of communications in which Robert Reeves, the Firm's Founding and Managing Partner, instructed Mr. Muller that sleeping overnight in the office was not permissible. I certainly agreed with that instruction.

6. I was concerned when I learned that despite repeated instructions not to sleep overnight in the office, Mr. Muller continued to do so. I was even more concerned when I viewed an email communication from Mr. Muller in which Mr. Muller was quite evasive, but nonetheless appeared to deny that he had done so, even though witness accounts I had heard suggested he had. In my mind, sleeping overnight in the office was concerning enough, doing so in contravention of a direct instruction not to was even worse, and apparently being untruthful about the matter was worse still, particularly given that telling the truth is a cornerstone of our ethical obligation as lawyers.

7. In the hope of resolving the issue once and for all, I agreed to discuss the issue with Mr. Muller. After viewing some pictures from the Firm's security cameras that

seemed to me to clearly depict Mr. Muller walking through the office with a sleeping bag, entering the "children's room" (a room with a couch) late at night, turning off the light, emerging from the children's room in the morning, going into the hallway, and returning shortly thereafter after appearing to have freshened up in the restroom, I asked Mr. Muller to respond to a discrete list of three questions. My primary and most basic question was, *"did you sleep overnight in the office?"* Despite posing that question to Mr. Muller several times, including during an in-person meeting in the San Francisco on September 14, 2011, Mr. Muller *refused to respond.* Initially, he refused to answer even my most basic inquiry until he had reviewed his personnel file – a surprising request, given that his personnel file would not hold the answer regarding whether he slept overnight in the office despite being explicitly told not to do so. Then, after he reviewed his personnel file on September 9, he still refused to answer even my most basic inquiry about whether he slept overnight in the office. I found his continuing refusal to cooperate and respond to even my most basic inquiry quite disturbing.

8. Within hours of leaving my September 14 meeting with Mr. Muller, while I was with Mr. (& Mrs.) Reeves headed home to Southern California, I was disturbed to learn from Shadouh Lopez, an R&A employee responsible for reviewing computer usage data, that starting the prior Saturday, September 10, 2011, Mr. Muller had been accessing an enormous amount of computer files that he had no business accessing – including files containing private, confidential, and attorney-client-privileged documents -- and copying a large volume of those files and other proprietary information and trade secrets onto external, non-Firm drives.

9. I was so disturbed by what I considered to be a breach of private, confidential, proprietary, and privileged information, that I agreed with Mr. Reeves that the safest thing to do was order that the entire San Francisco office's connection to the Firm servers housed in

Pasadena be shut down to prevent any further compromising of the Firm's privileged, proprietary and trade secret information.

10. I planned to question Mr. Muller the following day (as soon as I was able following my completion of my morning court hearing) regarding his actions with regard to the Firm's computer files. I did not get that opportunity because Mr. Muller emailed me and others at 5:30 a.m. the following morning, September 15, to announce his resignation, effective immediately.

11. After Mr. Muller's abrupt departure, I took responsibility for communicating with Mr. Muller. Following is a summary of some of those communications:

 a. On the evening of Thursday, September 15, 2011, after learning from Ms. Lopez the extent to which Mr. Muller had accessed files he had no legitimate business need to access and copied files he had no right to take with him, I sent a letter to Mr. Muller via email to his private email address advising him that we were aware of what we considered to be the extensive theft of highly confidential and proprietary information that he had perpetrated on the Firm. A true and correct copy of my September 15 letter is attached hereto as Exhibit B. My letter demanded the immediate return of all information that he illegally appropriated from the Firm's computer systems, and demanded that he not copy, duplicate, disseminate, transfer or attempt in any other way to make use of the information and documentation that he stole. *Id.* My letter also reminded him that the destruction of any of the information or the mediums in which they are contained in order to prevent their use in legal proceedings is unlawful. *Id.* Mr. Muller responded with what I considered a sly denial that he had done anything wrong, writing, "I am not aware of the 'theft' of any 'highly confidential' or 'proprietary' data." On September 16, 2011, I responded by email as follows:

5
DECLARATION OF NANCY E. MILLER IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER FOR A HEARING ON A PRELIMINARY INJUNCTION - Case No.:

"While you claim to be unaware of the 'theft' of any 'highly confidential' or 'proprietary' data, we have evidence that you accessed directories and drives that you were not authorized to access, and downloaded information that you were not entitled to take, including private information regarding the Firm's clients and personnel, confidential and proprietary business information, attorney-client privileged information, trade secrets and copyrighted materials. Included among the items we believe you have stolen are Firm client lists, confidential client-related memoranda, personnel files of Firm employees other than yourself, attorney-client communications between the Firm and its clients and the Firm and its own legal counsel, templates created by the Firm, and treatises and other resources purchased by the Firm. We understand you transferred this information from the Firm's desktop computer to another device, and believe you have transferred that information to your personal computer. In addition to violating the law, your conduct violates Firm policies, including those regarding confidentiality, privacy protocol, access to personnel files, computer usage and email, employee conduct and work rules, and return of Firm property.

In order to clarify our demand that you 'return' all of the electronic information that you illegally appropriated, we demand that you submit any flash drive, hard drive, or other items upon which you have stored any files, documents, or information from the Firm to an independent third party computer analyst for safekeeping until there is a determination regarding whether and to what extent you were entitled to remove the aforementioned data from the Firm. We have contacted the IT security firm Dataway, and arranged for them to take delivery of your hard drive between 3 p.m. and 4 p.m. tomorrow, Saturday,

DECLARATION OF NANCY E. MILLER IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER FOR A HEARING ON A PRELIMINARY INJUNCTION - Case No.:

September 17. Dataway is located at 180 Redwood St., Suite 300, San Francisco CA 94102. Their internet address is www.dataway.com, and their office phone number is 415-882-8700. Eoghan (pronounced 'Owen') O'Neill of Dataway will make himself available at Dataway's office between 3 p.m. and 4 p.m. Eoghan's cell phone number is (415) 244-8374 and his email address is eoghan@dataway.com . We trust this timing will work for you. If, however, you need to arrange for an alternate time tomorrow please contact Eoghan immediately.

As for any hard copies of documents that contain the aforementioned data, we demand that you deliver those to the building's security representative in the lobby of our building. We have instructed security to take delivery of such items, and keep them in a secure location until we are able to collect them.

Mr. Muller did not deliver the items. A true and correct copy of my September 16, 2011 email is attached as Exhibit C.

    b. Moreover, in Mr. Muller's September 16 email to me, Mr. Muller asked me not send any important or confidential mail to his home address on record (claiming the building has had problems with mail/parcel theft), and told me he would provide an alternate address once it was available. To date, Mr. Muller still has not provided an address where he can be reached, even despite my follow-up request for that information.

    c. Meanwhile, on September 16, after it was discovered that the physical file was missing for a time sensitive client matter on which Mr. Muller was working, I emailed Mr. Muller to ask about the file, and demanded that (if he had it in his

7
DECLARATION OF NANCY E. MILLER IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER FOR A HEARING ON A PRELIMINARY INJUNCTION - Case No.:

possession) it be returned by 10 a.m. on Monday, September 19. Mr. Muller did not respond until late Monday evening, admitting that he had taken the file, and claiming he did so "mistakenly."

12. Given my background as a trained mediator, I am inclined to work out agreed upon resolutions without court intervention. However, based on my dealings with Mr. Muller – for example, his refusal to respond to even my most basic inquiries when I was trying to resolve workplace concerns, my understanding that he accessed and copied large amounts of obviously confidential and proprietary data onto his computer in his last days of employment and then loaded a program to erase his steps, the manner in which he resigned abruptly without providing any case updates or forwarding address, his sly response to my demand that he return the obviously confidential and proprietary data that he took from the Firm – I do not believe there is any way to secure R&A's confidential, proprietary data without a Court Order.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and was executed on September 22, 2011, in Pasadena, California.

_____
Nancy E. Miller

4845-8589-0570, v. 1