Matthew D. Muller
5300 Mississippi Bar Drive
Orangevale, CA 95662
matthewdmuller@gmail.com
Defendant, *Pro Se*

FILED
2013 FEB -1 P 1:40
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| REEVES & ASSOCIATES, PLC, | Case No.: C 11-04762 WHA |
|---|---|
| Plaintiff(s), | **SUPPLEMENTAL RESPONSE TO ORDER OF JANUARY 10, 2013** |
| v. | |
| MATTHEW D. MULLER, AND DOES 1-25, INCLUSIVE, | |
| Defendant(s). | |

Defendant Matthew Muller ("Muller") submits the following response to the Court's Order of January 10, 2013

**I.**

**ARGUMENT**

**A. Muller Complied with the Plain Terms of the Stipulated Order By Delivering the Drives to Dataway by 1:00pm on October 14, 2011**

The Stipulated Order directed Muller to perform the following action:

By 1:00 p.m. on October 14, 2011, Defendant will deliver the drives identified in Paragraph 1 to Dataway (or if Dataway is unable, another mutually agreed upon firm specializing in computer security and forensics)("Computer Security Firm"), which firm

1
SUPPLEMENTAL RESPONSE TO ORDER OF JANUARY 10, 2013
Case No.: CV 11 4762 WHA

will image, preserve, or delete the data in a manner consistent with the Protective Order detailed below.

Muller complied with the requirement to deliver the drives to Dataway or another mutually agreeable firm by the stated date. Plaintiff Reeves & Associates ("R&A") does not contend otherwise. Instead, R&A seeks enforcement of a term that pertains to future handling of the drives, separate from the requirement that Muller deliver the drives to a computer security firm by October 14, 2011. No such term exists. R&A is a law firm and additionally was represented by outside counsel in conjunction with their lawsuit. R&A is a sophisticated litigant that should be expected to negotiate for a term it wishes to include, and to draft an agreement clearly reflecting that term.

In fact, the provision relating to "another mutually agreed upon firm" was added in the course of negotiations after Muller expressed concern to R&A's counsel about the cost of Dataway's services. Muller Dec., Exh. A. Muller suggested that other firms he had consulted had quoted lower costs for drive imaging and storage. *Id.* R&A advised through counsel that it was not opposed to using another firm, so long as it was roughly equivalent in quality to Dataway and "specializ[ed] in computer forensics and security." *Id.* Ultimately, the parties did settle on Dataway as the firm that would accept the drives, and Muller delivered the drives as required under the Stipulated Order. The remaining provisions of the Stipulated Order are directed at the firm that accepted the drives, Dataway, and Dataway is the proper subject of R&A's contempt motion. R&A has not alleged that Muller in any way interfered with Dataway's obligations or ability to comply with the remaining terms of the order.

**B.     Even if the Stipulated Order Is Interpreted To Allow Transfer of the Drives to Another Computer Firm After They Were Delivered to Dataway, Dataway Must be "Unable" to Process the Drives and Both Parties Must Agree on a New Computer Firm**

The Stipulated Order provides that the drives are to be delivered to "Dataway (or if Dataway is unable, another mutually agreed upon firm specializing in computer security and forensics)." Even if the Stipulated Order were interpreted to allow the parties to transfer the drive to another computer security firm after its delivery to Dataway in October of 2011, other conditions must exist under the Stipulated Order in order for the drives to be transferred.

*First*, the Stipulated Order qualifies that an alternate computer security firm is to be used only if Dataway is "unable" to process the drives. Plaintiff has provided no evidence that Dataway is "unable" to proceed, only that it is unwilling.

*Second,* both parties must agree upon a firm to which the drives will be transferred. Muller did not agree to the drives' transfer to another firm. Muller Dec., Exh. A. Presumably R&A would have effected that transfer if he had. Although under no obligation to do so, Muller initially agreed to work with R&A when it seemed R&A was seeking to process the drives in conjunction with its insurance claim litigation. *Id.* However, after R&A refused to state that it was not seeking the drives to mount yet another attack on Muller, Muller advised that he would not exceed the terms of the Stipulated Order for that purpose.

Muller is not required by the terms of the Stipulated Order to provide a reason why he would not agree to transfer to a particular firm. Muller did not envision having to provide such a reason prior to delivering the drives in October 2011, let alone provide it into the future under R&A's interpretation of the Stipulated Order. However, Muller's concerns related to cost and the handling of sensitive data both at that time and in the present dispute. As detailed below, Muller advised R&A's counsel that he disagreed with its proposed cost estimate. R&A's offer to finance Muller's portion of the costs did not address these concerns. Muller Dec., Exh. A. In addition, Muller's financial and employment status changed since the time R&A first presented its estimate. He is not currently employed and due to disability does not know when he will be employed again. *Id.*

To the extent R&A is seeking to process the drives for the purported purpose of learning what files are on the drive, Muller has offered to exceed the requirements of the Stipulated Order and provide an opportunity for them to do so. Muller Dec., Exh. A. Muller will agree to transfer and processing of the drives provided R&A agrees to bear the cost of this process and warrant that it is not seeking the data for purposes of further attacks on Muller. *Id.* Muller considers R&A's contentions that it is uncertain what files are on the drive to be in bad faith. *Id.* From the beginning of this litigation, R&A has made vague claims and professed uncertainty about the function of the two computer programs "Eraser" and "Spector 360." Muller has repeatedly asked R&A why it believes the "Eraser" program can perform functions that its support documentation indicates it cannot. *Id.* He has further asked whether the firm's security software "Spector 360" failed to perform in the manner indicated by its support documentation to log file transfers and other user transactions on its computers. At the time of Muller's employment R&A employed at least two dedicated IT professionals who presumably can review each program's functionality and respond to these questions. R&A has failed to reply and instead has sought to obfuscate these program's functions and mislead the Court about its reasons for seeking to process the drives. Most telling is the fact that R&A refuses to state that it does not seek the drive processing for purposes of continued attacks upon Muller and will not agree to any limitation on the purpose or scope of its data retrieval efforts. If indeed R&A merely seeks to investigate for internal purposes the contents of the drives, Muller remains open to a revised agreement limited to that purpose. *Id.*

**C.   The Stipulated Order Requires R&A to Bear the Cost of Work on the Drives Initiated by its Request**

Paragraph 3.g. of the Stipulated Protective Order provides that "[e]ach party who asks the Computer Security Firm to provide a copy of that party's files from Defendant's drives will bear the costs associated with obtaining a copy of that party's files from Defendant's drives."

4
SUPPLEMENTAL RESPONSE TO ORDER OF JANUARY 10, 2013
Case No.: CV 11 4762 WHA

1  R&A is requesting that the Computer Security Firm provide a mapped copy of its files from
2  the drives.  Muller has made no such request.  Muller has agreed that he does not require
3  the original media returned to him and therefor Computer Security Firm may store the drives
4  and data for the required five-year period without imaging.  Muller is willing to bear half of
5  costs associated with storing the drives.  Muller Dec., Exh. 3.  However, he is not willing to
6  bear costs associated with locating and copying R&A files from the drives. *Id.*

///

///

///

///

Dated: February 1, 2013

By: _____
Matthew D. Muller
Defednant, *Pro Se*

Matthew D. Muller
5300 Mississippi Bar Drive
Orangevale, CA 95662
matthewdmuller@gmail.com
Defendant, *Pro Se*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| REEVES & ASSOCIATES, PLC, | Case No.: C 11-04762 WHA |
|---|---|
| Plaintiff(s), | **DECLARATION OF MATTHEW MULLER IN SUPPORT OF SUPPLEMENTSL RESPONSE TO ORDER OF JANUARY 10, 2013** |
| v. | |
| MATTHEW D. MULLER, AND DOES 1-25, INCLUSIVE, | |
| Defendant(s). | |

1. My name is Matthew Muller. I live at 5300 Mississippi Bar Drive in Orangevale, California.

2. I am writing this declaration in response to the Court's Order of January 10, 2013 and in support of my Supplemental Response to the same Order.

3. I delivered the drives specified in the 2011 Stipulated Order to the computer security firm Dataway before 1:00 p.m. on October 14, 2011.

4. During settlement negotiations, I expressed concerns about costs associated with storing, imaging and analyzing the drives at issue. I had received other estimates for imaging and storage costs from other companies and was concerned that Dataway's estimate would be much higher. For that reason I reserved the possibility during settlement negotiations that another cheaper firm might be used, and I requested estimates from

1

SUPPLEMENTAL RESPONSE TO ORDER OF JANUARY 10, 2013
Case No.: CV 11 4762 WHA

Reeves & Associates' counsel of costs for Dataway's services. Reeves & Associates' counsel agreed to seek these estimates, but the specific services to be performed on the hard drives were still being negotiated and no final figure was reached. Reeves & Associates agreed that another, lower cost, company might accept the drives from me, provided that company specialized in data security and forensics and had proficiency roughly equivalent to Dataway's.

5. Earlier versions of the negotiated Order specified that it would be Dataway that would accept the drives from me. For the above reasons, the final Stipulated Order was revised to include the possibility that I might deliver the drives to another company if it seemed economically beneficial and agreeable to both parties.

6. I have attempted to maintain as cordial a relationship as possible with Reeves & Associates ("R&A") since what I thought would be the conclusion of this litigation in 2011. R&A has continued to pursue matters against me despite representing that we would go our separate ways following conclusion of the Settlement Agreement in 2011. To avoid further entanglement with R&A, I have agreed to any of its reasonable requests and sought to be conciliatory in general. I initially agreed to take actions outside the scope of the Stipulated Order when I believed R&A was seeking processing of the hard drives in conjunction with its insurance claim litigation. However, R&A refused to confirm that this was its purpose and refused to deny that its purpose was to further pursue some sort of legal or disciplinary action against me.

7. In discussions with R&A, I agreed to allow transfer of the drives if R&A agreed that the purpose of transfer was not to seek further action against me. It had at that point brought its complaint before two law enforcement agencies—the San Francisco police and the State Bar of California. Both agencies were aware of the drives and had authority to subpoena them in conjunction with an investigation. Neither chose to do so. R&A declined to agree that its purpose was not to seek further action against me.

2

SUPPLEMENTAL RESPONSE TO ORDER OF JANUARY 10, 2013
Case No.: CV 11 4762 WHA

8. R&A stated that it simply wanted to see what was on the drives and made the same assertions as in the Nancy Miller declaration of January 7, 2013. I replied with readily available information about the "Eraser" program and the security program used by the Firm, and pointed out that their statements made no sense in view of the obvious functionality of both programs. I asked whether their security program had failed to function in the manner advertised, or what the basis was for their belief that the "Eraser" program could perform functions that its support documentation made clear were impossible for it to perform. R&A did not respond to these queries.

9. At this time I remain unemployed and in poor health. I do not know when or if I will become employed again.

10. I am willing to pay costs associated with storing the drives for the required period of time. I am not willing to bear costs created by R&A's desire to have copies of the files on the drive as the Stipulated Order requires the requesting party to bear these costs on its own.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 1, 2013

By: /s/
Matthew D. Muller
Defendant, *Pro Se*

Matthew D. Muller
5300 Mississippi Bar Drive
Orangevale, CA 95662
matthewdmuller@gmail.com
Defendant, *Pro Se*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REEVES & ASSOCIATES, PLC, | Case No.: C 11-04762 WHA |
| Plaintiff(s), | **CERTIFICATE OF SERVICE** |
| v. | |
| MATTHEW D. MULLER, AND DOES 1-25, INCLUSIVE, | |
| Defendant(s). | |

I, Matthew Muller, certify that on February 1, 2013, I served a true and correct copy of the attached on Plaintiff's counsel listed below by e-mailing it to Plaintiff's counsel and by placing it in a U.S. first class mail envelope with postage prepaid and addressed as listed below, and placing the envelope in postal service receptacle.


KERRY FREEMAN

Miller Law Group

111 Sutter Street, Suite 700

San Francisco, CA 94104

Executed: February 1, 2013

By:

---
1

RESPONSE TO ORDER OF JANUARY 10, 2013 AND REQUEST FOR CONTINUANCE
Case No.: CV 11 4762 WHA